Van Voorhis, J.
Defendant is by occupation a salesman of marine supplies to ships. Plaintiff Baltic Marine Supplies, Inc., is a ship chandler. This corporation was organized by plaintiffs Bendixen and Kafka who, on September 30, 1941, entered into an agreement with defendant which provided, among other matters, that defendant would devote his entire time and best efforts to promoting the interests of the plaintiff corporation, in return for which the corporation would pay him $40 per week, plus a percentage of net earnings to be applied to the purchase of stock. This contract contained a negative covenant by defendant to refrain from selling ship chandler’s supplies inside of the business area of the Port of New York ivithin a period of eighteen months following the termination of said *279 agreement if defendant ‘ severs Ms employment with this Corporation or leaves the employment of the Corporation for any reason whatsoever ”.
The language quoted indicates that the intention of the contracting parties was that the negative covenant should take effect if the employment relationship was terminated by the act of defendant and not at the instance of the corporation. That has given rise to a controversy concerning Avhether defendant quit his employment or Avas discharged. In resolving that issue, it is necessary to investigate Avhether defendant, by violating his contract and disregarding his obligations to his employer, caused the action that Avas taken by plaintiff corporation .in stopping his pay and putting an end to the performance by him of the work for which he was hired. It is necessary to state briefly the facts creating this issue.
After his contract Avas signed on September 30, 1941, defendant "was made president of plaintiff corporation and placed in charge of its sales of marine supplies to ships in New York Harbor. He continued to occupy this position for nearly four years and a half. Then differences arose due principally to his alleged failure to pay to the corporation cash received by him from vessel masters. Plaintiffs Bendixen and Kafka owned substantially all of the stock. Pursuant to action taken at a stockholders’ meeting at wMch all of the outstanding stock Avas represented, a letter was sent to defendant by the corporation on February 25, 1946, stating that he was to continue in complete charge of soliciting and sales promotion but notifying him that whenever he received cash payments from vessel masters, they were to be paid over to the office manager and bookkeeper, or they would be deducted from his salary. TMs letter appears to have gone unansAvered at the time. On April 8, 1946, defendant was notified by another letter signed by Bendixen and Kafka that he had failed to fulfill his obligations to the corporation under his contract, and, specifically, that he had not complied with the directions contained in the letter of February 25, 1946, in neglecting to turn over to the office manager and bookkeeper “ sums in the neighborhood of $800., which have been collected by you on ships’ stores.” Other acts constituting alleged neglect of duty were charged. This communication also having apparently gone unanswered, at a stockholders’ and directors’ meeting on April 16, 1946, a resolution was adopted removing defendant from having charge of solicitation and sales promotion and effectually terminating Ms further employment. His weekly salary payments had already been *280 suspended on March 22, 1946, in accordance with the letter of February 25th. On April 30, 1946, defendant wrote a letter to the corporation making no specific mention of the charge that he had failed to pay over collections, but throwing the blame upon the corporation and asserting that he had been discharged without his acquiescence or consent. His letter concludes: ‘ By your acts the said contract has therefore ceased to be binding on me.”
•Certain accounting sheets were offered by plaintiffs and received in evidence indicating that defendant was in arrears in paying over his collections, even after deducting his salary allowances subsequent to the time when his weekly payments were stopped on March 22, 1946. The office manager testified that she showed these statements to the defendant who stated that he had collected the amounts shown thereon from vessels but had not paid them into the corporation.
Under these circumstances it might be concluded that defendant had brought his discharge upon himself by neglecting his duties to the corporation, and thus become the active agent in bringing about the termination of his employment which would render effective his covenant to refrain from engaging in a competing business. Such a conclusion would sustain the judgment of the trial court. The issue depends mainly upon whether defendant had adopted a practice of retaining the collections which he made from masters of vessels, and was indebted to the corporation in a substantial sum of money when his employment was suspended. That must determine, in large measure, whether he ended his employment by his own misconduct, or whether his employment was severed by the corporation in furtherance of some purpose that was not connected with the faithful performance of his work. In no event could he be heard to say that his employment was terminated at the instance of the corporation if he set in motion the chain of events which made his discharge inevitable or justifiable. That would enable bim to escape the effects of his contract by taking advantage of his own wrong.
When defendant sought to introduce evidence at the trial that no such moneys were owing to his employer, the court said: “ Let us not try that out here ”, and the court later reminded the plaintiff’s attorney that his objection had been sustained to testimony by defendant on the accounting phase of this lawsuit. These rulings seem to have been made on the theory that there is a separate suit pending for an accounting, and that such questions should be tried out there.
*281 It thus appears that defendant was precluded from refuting or explaining the very testimony on which alone the judgment against him could he sustained.
For these reasons, the judgment should be reversed and a new trial granted, with costs to appellant to abide the event, in order to ascertain whether the plaintiff corporation or the defendant was the actuating cause of the termination of his employment.
Martin, P. J., Glennon, Dore and Callahan, JJ., concur.
Interlocutory judgment unanimously' reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.